UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTINE SARACENI,

          Plaintiff,

    v.

M&T BANK CORPORATION,

          Defendant.

_____

**FIRST AMENDED COMPLAINT**

**Case No.:  19-cv-1152**

Plaintiff, Christine Saraceni, by and through her attorneys, Hagerty & Brady, for her First Amended Complaint in the above-entitled action, alleges as follows, upon information and belief:

## PARTIES

1.    Plaintiff Christine Saraceni ("Plaintiff") is an individual residing in Batavia, New York.

2.    Defendant M&T Bank Corporation ("Defendant") is a New York corporation with a principal place of business located in Buffalo, New York.

## JURISDICTION AND VENUE

3.    This is an action seeking damages for breach of contract, wrongful termination of severance benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), wrongful termination of health insurance

1

benefits under ERISA, failure to provide notices as required by ERISA, and statutory penalties under ERISA.

4.     This Court has subject matter jurisdiction over this lawsuit pursuant to federal question jurisdiction, 28 U.S.C. §1331, because, under 29 U.S.C. § 1132(e)(1), district courts of the United States have exclusive jurisdiction of civil actions brought under 29 U.S.C. § 1132.  This Court has subject matter jurisdiction of the state law claim in this lawsuit pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in the Western District of New York, because, under 29 U.S.C. § 1132(e)(2), the action may be brought where the qualifying plan is administered, where the breach took place, or where the defendant resides or may be found.  The Western District of New York is the appropriate venue under any of these statutory criteria.

## FACTUAL ALLEGATIONS

6.     Plaintiff is a former employee of Defendant.

7.     Plaintiff first became employed by Defendant in June of 2008, at which time she was hired to sell reverse mortgages for Defendant.

8.     During Plaintiff's employment orientation, she was asked to prepare a list of names and addresses of her friends, family, and acquaintances, so that Defendant could send them a postcard announcing her employment.

2

9.    Plaintiff prepared a spreadsheet of the names and addresses of family, friends, and acquaintances (the "Spreadsheet"). The Spreadsheet was created by Plaintiff and last modified in the summer of 2008. Plaintiff created the spreadsheet using only publicly available information and information that was available to her prior to her employment at Defendant.

10.    None of the information contained in the Spreadsheet was obtained as a result of Plaintiff's employment by Defendant.

11.    None of the information contained in the Spreadsheet was derived using any personally identifiable financial information that is not publicly available.

12.    The Spreadsheet is a list of names and street addresses that contains only publicly available information as that term is defined in 12 CFR § 1016.3.

13.    The Spreadsheet does not indicate that any of the individuals on the list is a consumer of a Defendant or of any other financial institution.

14.    The Spreadsheet does not contain any nonpublic personal information as that term is defined in 12 CFR § 1016.3.

15.    Plaintiff worked for Defendant selling reverse mortgages for the next 11 years.

3

16.     At some point prior to June 26, 2019, Defendant decided to stop selling reverse mortgages.

17.     On June 26, 2019, Plaintiff received notice from Defendant that it would be closing the Reverse Mortgage Department, and that she and other employees would be separated from employment with Defendant as of July 26, 2019.

18.     Based on her position and her years of service to Defendant, Plaintiff was eligible for severance benefits pursuant to Defendant's Severance Pay Plan (*see infra*, at ¶ 19), the terms of which Defendant set forth in a written agreement (the "Severance Agreement").   Plaintiff executed the Severance Agreement and complied with all terms therein.

19.     The Severance Agreement is part of the "M&T Bank Corporation Employee Severance Pay Plan" ("Severance Plan"), which is a welfare benefit plan administered by Defendant and governed by ERISA.

20.     In the Severance Agreement, Defendant promised that it would pay Plaintiff her salary and continue her healthcare benefits for 17 weeks following her last official day of employment (July 26, 2019).

21.     The Severance Agreement further states that "[u]pon completion of the Severance Period, [Plaintiff] may elect to continue [her] health coverage as provided by the Consolidated Omnibus Budget Reconciliation Act of 1986,

4

as amended ("COBRA"). Additional information concerning [Plaintiff's] COBRA rights will be mailed to [her] under separate cover."

22.    On July 26, 2019, Plaintiff completed her last day of employment at Defendant and began her severance period after more than eleven years of service to Defendant.

23.    At the time Plaintiff left employment with Defendant, she and her husband were both insured under Defendant's "Bank One Plan," a Consumer Directed Health Plan group policy of health insurance for M&T Bank employees and their family members.

24.    On August 7, 2019, one week into Plaintiff's severance period, and before she had even received a single payment under the Severance Agreement, Plaintiff received an email from Meghan Frank, a Human Resources Senior Employee Relations Specialist at Defendant, stating that "[a] review of your email traffic was conducted after your departure and revealed that you sent a client list spreadsheet to your husband's email address…This message also confirms that due to this violation, your severance benefits have been forfeited and will not be paid out to you."

25.    The Spreadsheet was not a client list.

26.     Plaintiff's act of emailing the Spreadsheet to herself and her husband was not a violation of the Severance Agreement, and was therefore not grounds on which to terminate the Severance Agreement.

27.     After receiving the email from Ms. Frank, Plaintiff called Ms. Frank and asked for an explanation of what was going on.

28.     On that telephone call, Ms. Frank told Plaintiff she had breached her Severance Agreement and told Plaintiff to "prove" that the list was not a client list.

29.     Defendant never provided Plaintiff any written notice or explanation of its decision to terminate her benefits.

30.     Nevertheless, Defendant has refused to pay Plaintiff her Severance Benefits, including her salary, as it promised to do in the Severance Agreement and is obligated to do as part of the Severance Plan

31.     On August 16, 2019, Plaintiff's husband went to his doctor for a sudden medical condition.  While at the doctor, the billing office informed him that Independent Health was refusing to cover his medical expenses.  The following Monday, August 19, 2019, Plaintiff contacted Independent Health and was informed that Defendant had terminated her and her husband's health insurance.

6

32.     Plaintiff received no notice of any kind from Defendant that the health insurance benefits for Plaintiff or her husband would be terminated or were terminated, other than the above-described email from Ms. Frank.

33.     The sudden loss of health insurance put Plaintiff and her husband in grave danger of immediate, irreparable harm not only to their finances, but also to their physical health, wellbeing, and lives.

34.     Defendant never provided any notice or explanation of its decision to immediately and without notice terminate Plaintiff and her husband's healthcare benefits.

## FIRST CLAIM FOR RELIEF
### Wrongful Termination of Severance Benefits

35.     Plaintiff hereby realleges paragraphs 1 through 34 above as if set forth here in full.

36.     The Severance Plan is an employee welfare benefit Plan and is governed by ERISA.

37.     Under the Severance Plan, based on her job title and years of employment, Plaintiff was entitled to her salary and healthcare benefits for a period of 17 weeks after her last day of employment.

38.     The Severance Plan includes a provision authorizing the forfeiture of the Severance Benefits, but only upon the occurrence of six defined events.

39.   Defendant never provided notice to Plaintiff explaining why her Severance Benefits were terminated, including which, if any, of the six events Defendant alleges occurred.

40.   Plaintiff's mailing of the Spreadsheet to herself and her husband does not meet the definition of any of those six events.

41.   Defendant violated Plaintiff's rights under ERISA and under the Severance Plan, and she is entitled to bring this action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to her under the terms of the Severance Plan.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

42.   Plaintiff hereby realleges paragraphs 1 through 41 above as if set forth here in full.

43.   The Severance Agreement is a written contract between Defendant and Plaintiff.

44.   Pursuant to the Severance Agreement, Defendant promised to provide Plaintiff with certain benefits, including but not limited to continuation of her salary, healthcare benefits, and paid professional career transition assistance for 17 weeks.

45.   Plaintiff complied with all terms of the Severance Agreement, including releasing Defendant from any pre-existing claims she may have had.

8

46.    By unilaterally and without cause terminating Plaintiff's severance benefits, including her severance pay, her healthcare benefits, and other benefits promised to her under the Severance Agreement, Defendant breached the Severance Agreement.

47.    As a direct and proximate result of Defendant's breach of the Severance Agreement as described above, Plaintiff has suffered direct financial damages in an amount to be proved at trial.

48.    As a further direct and proximate result of Defendant's breach of the Severance Agreement as described above, Plaintiff has suffered foreseeable, consequential damages, including, but not limited to, increased interest on student loan payments that have been deferred as a result of Defendant's wrongful termination of Plaintiff's severance package.

### THIRD CLAIM FOR RELIEF
**Wrongful Termination of Health Insurance Benefits under ERISA**

49.    Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 48 above as if fully set forth herein.

50.    Prior to the end of her employment with Defendant, Plaintiff and her husband were insured under Defendant's "Bank One Plan," a Consumer Directed Health Plan group policy of health insurance for M&T Bank employees and their family members, administered through Independent Health, Group Number 13038.

9

51.    The policy of group health insurance under which Plaintiff and her husband were insured, Defendant's "Bank One Plan," a Consumer Directed Health Plan group policy of health insurance for M&T Bank employees and their family members, administered through Independent Health, Group Number 13038, meets the definition of an employee welfare benefit plan under ERISA.

52.    ERISA authorizes a participant of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce her rights under the terms of the plan, and to clarify her rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B).

53.    Defendant's termination of Plaintiff's health insurance plan was unlawful under ERISA and in violation of the terms of the health insurance plan.

54.    Defendant's violations of ERISA have damaged Plaintiff in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Claim for Other Appropriate Relief Under ERISA § 502(a)(3)

55.    Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 54 above as if fully set forth herein.

56.     Plaintiff is entitled to equitable relief under 29 U.S.C. § 1132(a)(3), including enjoining Defendant from continuing to violate her rights under ERISA and the health insurance plan, and retroactively covering Plaintiff and her husband under the group policy of health insurance from the date of Defendant's termination onward, consistent with her rights under the Severance Plan, including the option of continuation coverage for up to 18 months as provided in 29 U.S.C. § 1162.

### FIFTH CLAIM FOR RELIEF
**Failure to Provide Notice of Rights to Continue Coverage Under COBRA**

57.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 56 above as if fully set forth herein.

58.     Congress has recognized the need for employer-sponsored health insurance plans, such as the one in this lawsuit, to provide beneficiaries with the option to continue benefits under the plan even after termination of employment.

59.     As a result, under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), codified in part at 29 U.S.C. § 1161 *et seq.*, a sponsor of a group health care plan must provide that each qualified beneficiary who would lose coverage under the plan as a result of a "qualifying event" is entitled to elect continuation coverage under the plan.

11

60.   Termination of employment for any reason other than gross misconduct is a qualifying event.

61.   Plaintiff was not terminated for gross misconduct.

62.   29 U.S.C. § 1166 and prescribed federal regulations provide that, upon the occurrence of a qualifying event, an employer who is also a plan administrator is required to provide qualified beneficiaries written notice of their rights to continue coverage within 44 days of the qualifying event.  Such a notice must include:

(a) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(b) Identification of the qualifying event;

(c) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(d) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to

elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(e) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(f) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a

waiver of the right to continuation coverage before the date by which the election must be made;

(g) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(h) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(i) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

14

(j) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(k) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(l) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(m) An explanation of the importance of keeping the administrator informed of the current addresses of all

participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(n) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

29 CFR § 2590.606-4.

63.    The notice must be addressed to both the participant and the participant's spouse. *Id.*

64.    Defendant has failed to provide Plaintiff and Plaintiff's husband, a qualified beneficiary under the health insurance plan, notice as required by 29 U.S.C. § 1166 and the regulations promulgated thereunder.

65.    By wrongfully terminating Plaintiff's health insurance and failing to provide Plaintiff the opportunity to continue coverage under the plan, Defendant violated Plaintiff's rights as guaranteed by COBRA.

66.    An administrator who fails to meet the COBRA notice requirements as described above may be personally liable to the participant and any qualified beneficiary in the amount of $110 per day, per participant and per beneficiary. 29 U.S.C. § 1132(c); 29 CFR § 2575.502c-1.

67.   Defendant is personally liable to Plaintiff and her husband, a qualified beneficiary, for its failure to provide notice of each's rights under COBRA, in an amount of up to $110 per day per beneficiary beginning, at the latest, on September 8, 2019, which is 44 days after the termination of Plaintiff's employment on July 26, 2019.

68.   Plaintiff is entitled to compensatory and statutory damages for Defendant's wrongful termination of health care benefits and its failure to provide Plaintiff with a continuation of health care benefits as required under federal and state law.

## SIXTH CLAIM FOR RELIEF

### Other Statutory Penalties Under ERISA § 502(c)

69.   Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 68 above as if fully set forth herein.

70.   ERISA provides procedural rights to employee benefit plan participants such as Plaintiff.

71.   By statute, if an employer makes a decision to deny benefits under an ERISA plan, it must provide adequate notice in writing to the participant setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.  29 U.S.C. § 1133(1).

72.    It must also afford the participant a reasonable opportunity for a full and fair review of the decision. 29 U.S.C. § 1133(2).

73.    The regulations promulgated under 29 U.S.C. § 1133 provide that the content of the written notice under 29 U.S.C. § 1133(1) shall include: (1) the specific reason or reasons for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the participant wishes to submit her claim for review.  29 CFR § 2560.503-1.

74.    Defendant failed to provide Plaintiff with a notice regarding its decision to deny her Severance benefits, in violation of 29 U.S.C. § 1133(1).

75.    Defendant failed to provide plaintiff a reasonably opportunity for a full and fair review of its decision to deny her Severance benefits, in violation of 29 U.S.C. § 1133(2).

76.    Defendant failed to provide Plaintiff with a notice regarding its decision to terminate her health insurance, in violation of 29 U.S.C. § 1133(1).

77.    Defendant failed to provide plaintiff a reasonably opportunity for a full and fair review of its decision to terminate her health insurance, in violation of 29 U.S.C. § 1133(2).

18

78.     Plaintiff requested from Defendant on August 7, 2019 an explanation for its decision to terminate her Severance benefits.

79.     Defendant thereafter failed to provide Plaintiff with a notice, as required under 29 U.S.C. § 1133, explaining its decision to terminate her severance benefits.

80.     ERISA provides that any plan administrator who fails or refuses to comply with a participant's request for any information which the administrator is required to provide under ERISA may be personally liable to such participant in the amount of up to $110 per day from the date of such failure and refusal.  29 U.S.C. § 1132(c); 29 CFR § 2575.502c-1.

81.     Because Defendant failed to provide Plaintiff with a written explanation of its decision terminating her benefits, Plaintiff is entitled to statutory penalties of $110 per day running from August 7, 2019, the date she asked for an explanation and was denied one.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that she be awarded:

(a)     compensatory damages according to proof on its First Claim for Relief, estimated to be not less than $25,000.00;

(b)     compensatory damages according to proof on its Second Claim for Relief, estimated to be not less than $25,000.00, and consequential

damages according to proof, together with interest at the New York statutory rate of nine percent;

(c)   compensatory and statutory damages according to proof on her Third Claim for Relief;

(d)   on her Fourth Claim for Relief, equitable relief in the form of an Order retroactively covering Plaintiff and her husband under the policy of group health insurance wrongfully terminated by Defendant consistent with the terms of the Severance Plan and Severance Agreement, including her right to continue coverage under COBRA at the expiration of the severance period;

(e)   on her Fifth Claim for Relief, the maximum statutory penalties as allowed by law, running at a rate of $110 per day per participant and per beneficiary, beginning on the date by which Defendant was required to provide notice of rights under COBRA and through the date of judgment in this case;

(f)   on her Sixth Claim for Relief, the maximum statutory penalties as allowed by law, running at a rate of $110 per day beginning on August 7, 2019 and running through the date of judgment in this case;

(g)   all costs of suit herein;

(h)   attorneys' fees according to proof and as provided by 29 U.S.C.

§ 1132(g); and,

(i)   such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:   October 3, 2019
Buffalo, New York


**HAGERTY & BRADY**


*/s/ Daniel J. Brady*
**Daniel J. Brady, Esq.**
**Attorneys for Plaintiff**
69 Delaware Ave. Suite 1010
Buffalo, NY 14202
(716) 856-9443 office
(716) 856-0511 fax
dbrady@hagerty-brady.com

TO:   Jodyann Galvin Esq.
Hodgson Russ LLP
Attys. for Defendant M&T Bank
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040

21