UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTINE SARACENI,

      Plaintiff,

                                **DECLARATION OF MICHAEL A. BRADY, ESQ. IN SUPPORT OF MOTION FOR ORDER PROHIBITING FURTHER EVIDENCE DESTRUCTION BY DEFENDANT**

v.

                                **Case No.: 19-CV-1152**

M&T BANK CORPORATION,

      Defendant.

---

      **MICHAEL A. BRADY, ESQ.**, under penalty of perjury, pursuant to 28 U.S.C. § 1746, states as follows:

      1.    I am an attorney admitted to practice law in New York State and before this Court. I am a member of the law firm Hagerty & Brady, attorneys for Plaintiff Christine Saraceni in this action.

      2.    I make this Declaration in support of Plaintiff's motion for an Order of this Court prohibiting Defendant M&T Bank Corporation ("M&T") from engaging in the destruction or alteration of documents, electronic files, or other evidence which may be potentially relevant to this lawsuit and from

1

counseling, requesting or instructing any potential witness to destroy or alter potentially relevant evidence, and for such further relief as this Court deems appropriate.

3. As described in further detail below, it has recently been disclosed that **during this lawsuit**, M&T contacted upwards of five witnesses, all former M&T employees and coworkers of Plaintiff, and requested or instructed them to destroy evidence that may be relevant in this case.

## PROCEDURAL AND FACTUAL BACKGROUND

4. Plaintiff was an employee in M&T's Reverse Mortgage Department for more than 11 years until the summer of 2019, when M&T decided to close its Reverse Mortgage Department and lay off each of its approximately 10 employees.

5. M&T maintains an ERISA employee benefit plan, the M&T Severance Pay Plan ("Severance Plan"), for employees who are terminated due to restructurings such as the one that closed the Reverse Mortgage Department.

6. Under the Severance Plan, based on her 11 plus years of service to M&T, Plaintiff was entitled to receive 17 weeks of her salary, healthcare benefits, and other benefits.

7. On August 7, 2019, less than two weeks after her last day of employment, Plaintiff received an email from M&T employee Meghan Frank

2

notifying her that her severance benefits had been terminated due to a supposed violation of the M&T Information Security Policy.[1] *See* Dkt. #14-6.

8. On August 27, 2019, days after Plaintiff learned that her family's health insurance had also been terminated by M&T, Plaintiff, commenced this lawsuit by filing a Complaint asserting claims of breach of contract and violations of ERISA and an expedited motion for a temporary restraining order seeking restoration of her health insurance. *See* Dkt. #1-3. On August 28, 2019, a conference was held before the Hon. Lawrence Vilardo at which M&T agreed to restore and extend Plaintiff's health insurance, but only through the end of September 2019. *See* Dkt. #9.

9. Because Plaintiff's health insurance was only restored through the end of September 2019, and not through the end of November 2019 as provided by the Severance Plan, on September 25, 2019, Plaintiff moved for a preliminary injunction seeking restoration of her health insurance through the severance period.

---

[1] Specifically, Ms. Frank erroneously accused Plaintiff of sending her husband a "client list." The purported "client list" was actually, as Judge Vilardo explained in his decision of November 6, 2019, "an excel spreadsheet containing a list of names and addresses. The parties generally agree that this list was created by Saraceni during her tenure at M&T for the purpose of sending 'Look Who Joined' postcards notifying Saraceni's friends and family of her new employment." Dkt. # 50, at 3. It is not, under any reasonable interpretation, a "client list."

3

10. On October 3, 2019, Plaintiff filed an Amended Complaint, adding, *inter alia*, an ERISA claim for the loss of Plaintiff's monetary severance benefits. *See* Dkt. #28.

11. On October 9, 2019, M&T submitted its opposition to Plaintiff's motion for a preliminary injunction, as well as its own cross-motion for a preliminary injunction[2]—sought on an expedited basis. *See* Dkt. #34, 35.

12. M&T's opposition to Plaintiff's motion (and its own cross-motion for a preliminary injunction against Plaintiff) was supported in principal part by a declaration of its employee Meghan Frank, sworn to on October 9, 2019. *See* Dkt. #34-3.

13. On October 16, 2019, M&T served its Answer to the Amended Complaint, which asserted counterclaims against Plaintiff, including for breach of the duty of loyalty. *See* Dkt. #38.

14. On November 4, 2019, M&T served an Amended Answer and Counterclaims, which asserted, *inter alia*, a breach of the duty of loyalty claim against Plaintiff for violating M&T's Information Security Policy. *See* Dkt. #49.

---

[2] Though not germane to this motion, M&T's cross motion, which was denied on the merits (See Dkt.# 70), sought the "return…of all M&T data" as well as a $1,500 bond.

## M&T'S ARGUMENTS IN THIS CASE ABOUT ITS INFORMATION SECURITY POLICY

15. In its counterclaim for breach of the duty of loyalty, M&T has alleged, inter alia, that:

> Plaintiff breached her obligations to M&T when she failed to adhere to a policy of M&T, the M&T Information Security Policy...Plaintiff's conduct of transmitting M&T's property out of M&T is a breach of her duty of loyalty...Plaintiff did not seek or have authorization to transmit M&T data out of M&T.

Dkt. 49, at ¶¶ 136-142.

16. In this lawsuit, M&T has taken an extraordinarily broad and draconian interpretation of its Information Security Policy, arguing that **anything** processed on an M&T Bank computer is M&T property and may not be transmitted out of M&T.

17. For example, at the argument of Plaintiff's motion and M&T's cross-motion for a preliminary injunction, M&T's counsel argued that an employee's email transmission of wedding lists or grocery lists would constitute a breach of the Information Security Policy:

> THE COURT: Let's talk about the wedding list. If that's really
> just a wedding list, if that subset of the big list is really just a list of people that she took from -- I mean, and it seems like a reasonable thing to do. I was talking with my law clerks, and we did something very similar here

.5

> when my kids got married and -- and culled from a larger list, lists of people who we wanted to invite to the wedding. If that in fact is the case, you don't think that is proprietary or confidential, right?
>
> MS. GALVIN: Well, following Your Honor's logic, it would not be confidential. I do think it's proprietary...
>
> THE COURT: Why?
>
> MS. GALVIN: The reason is the information security policy, which Ms. Saraceni was subject to and acknowledged, that anything created on an M&T system belongs to M&T.
> Now you could argue that there's a different value to something like a wedding list, or a grocery list that you may create on Microsoft word, or a list of appointments that you have to attend to of a medical nature that you create on your work computer.
> But the bottom line is the policy of M&T is that that belongs to M&T.

Argument of Preliminary Injunction Motion, October 28, 2019, at pages 18-19. (Transcript attached as **Exhibit A**).

  18. While the validity of M&T's interpretation of its Information Security Policy and M&T's concomitant breach of loyalty allegations (and whether they have a good faith basis) is not the subject of *this* motion, it is nonetheless important to understand this context because of what M&T (indeed its main witnesses in this lawsuit) was clandestinely doing behind the scenes with respect to Plaintiff's former coworkers who had also emailed documents "out of the M&T system."

6

19. As explained in more detail below, at the same time M&T was responding to Plaintiff's motion for a preliminary injunction and cross-moving for its own injunction in October 2019, M&T employees (including some of its main witnesses in this lawsuit) deliberately considered and then instructed / requested former coworkers of Plaintiff to destroy documents.

### M&T'S REQUESTS AND/OR INSTRUCTIONS TO PLAINTIFF'S COWORKERS TO DESTROY DOCUMENTS DURING THIS LAWSUIT

20. On September 4, 2020, M&T served its initial disclosures under Rule 26(a)(1). Those disclosures, which are attached as **Exhibit B**, do not name any of Plaintiff's coworkers as potentially relevant witnesses.

21. Indeed, in this lawsuit, M&T initially took the position that Plaintiff's coworkers did not have information that is potentially relevant to this lawsuit. *See, e.g.*, Letter of November 6, 2020, attached as **Exhibit C** ("M&T disputes that former employees of the Reverse Mortgage Department have relevant information pertaining to this lawsuit").

22. After attempts by Plaintiff's counsel to gain her former coworker Richard Downs' voluntary cooperation failed, Mr. Downs was served with a subpoena for documents on November 17, 2020.

7

23. On November 26, 2020, Mr. Downs personally produced a large number of documents, all electronic, in response to the subpoena. Copies of those documents were promptly provided to M&T's counsel.

24. Among the documents produced by Mr. Downs was an Excel Spreadsheet, titled "Client Contact 07-2019.xlsx." A true and accurate copy of "Client Contact 07-2019.xlsx" is attached as **Exhibit D**, subject to Plaintiff's accompanying motion to seal.

25. Mr. Down's "Client Contact 07-2019.xlsx" appears to include tens of thousands of pieces of confidential customer information regarding more than 2,400 specifically identified current or former M&T customers, including credit reports and other non-public personal information.

26. In other words, unlike the document Plaintiff sent, which Meghan Frank erroneously described as a "client list," the spreadsheet "Client Contact 07-2019.xlsx" plainly contains, as its name suggests, an actual list of M&T "clients"/customers.

27. Also among the documents produced by Mr. Downs was an email to him from Meghan Frank on October 10, 2019 (**one day after she had submitted a sworn declaration in this lawsuit**) requesting/instructing Mr. Downs to destroy any documents or files that he emailed himself from M&T from April through July 2019 during his employment at M&T. This email and

8

its attachment are attached as **Exhibit E**. *See Id.*, Data Destruction Certificate, ("I, Richard Downs, former employee at M&T Bank…certify that…I have permanently deleted…all emails and associated electronic files containing proprietary and/or customer information of M&T Bank or M&T Bank's affiliates, or any of their respective vendors or customers…that I received in my email account, rdowns1372@gmail.com, from April 2019 through July 2019").

28. On December 31, 2020, in response to Plaintiff's First Request for Production, served September 10, 2020, M&T produced a host of documents, including the following email exchange (attached as **Exhibit F** and reproduced below), initiated by Ms. Frank on October 8, 2019 (**one day before** Ms. Frank submitted a sworn declaration in support of M&T's cross-motion for a preliminary injunction against Plaintiff):

> **Message**
>
> **From:** O'Neill, James [joneill@mtb.com]
> **Sent:** 10/9/2019 8:15:00 AM
> **To:** Salman, Arthur [asalman@mtb.com]
> **CC:** Frank, Meghan [mmfrank@mtb.com]
> **BCC:** O'Neill, James [joneill@mtb.com]; jeff oneill [joneill@mtb.com]
> **Subject:** FW: Reverse Mortgage Data Breach Incident
>
> Arthur,
>
> This relates to the Saraceni matter. Meghan will be requesting data destruction certificates from five former employees, but with no impact to severance. Unless you have any concerns, I will have Meghan proceed.
>
> Thanks.
>
> Jim
>
> From: Frank, Meghan
> Sent: Tuesday, October 8, 2019 5:15 PM
> To: O'Neill, James <joneill@mtb.com>
> Subject: Reverse Mortgage Data Breach Incident
>
> Hi Jim,
>
> I am progressing to the data destruction certificate portion of data breach involving the Reverse Mortgage team. I will need to contact the five former employees and ask them to execute a data destruction certificate. We have previously reviewed and confirmed that we are not intending to impact their severance benefits, but I wanted to check given the Saraceni matter, to ensure I proceed appropriately.
>
> Please let me know if you have any reservations or concerns about me contacting these former employees at this time.
>
> Thank you,
> Meghan Frank, PHR; SHRM-CP
> Vice President | M&T Bank
> Human Resources | Senior Employee Relations Specialist
> 80 Holtz Drive, Cheektowaga, NY 14225
> 716-840-7995
> mmfrank@mtb.com | mtb.com

29. Upon information and belief, James O'Neill is an M&T Human Resources employee. Arthur Salman (from whom Mr. O'Neill apparently sought approval to have Ms. Frank send data destruction certificates to Plaintiff's former coworkers at M&T) is an M&T Bank employee and on information and belief, an attorney admitted to practice in New York State and before this Court.

30. Based on a review of my notes and my personal recollection, Mr. Salman personally attended at least one of the court appearances in this matter in the fall of 2019.

31. As indicated above, Mr. Downs received his data destruction instructions on October 10, 2019, and, upon information and belief, based on the statements in the Frank/O'Neill emails produced above and our investigation it appears that the four additional former M&T coworkers of Plaintiff were requested/instructed by Ms. Frank to destroy documents on that same day.

32. In other words, at the same time M&T was taking the position in this lawsuit and before this Court, that its Information Security Policy was so expansive and so strict that any transmission of any "data" of any nature outside of M&T was a transgression warranting termination of severance benefits—and as it alleges in its counterclaim, an actionable breach of the duty of loyalty—it was surreptitiously instructing five former employees—**half of the entire Reverse Mortgage Department**—to destroy any documents or files they had emailed themselves from their M&T email accounts.

33. It should not be ignored that *prior* to the service of a subpoena on Mr. Downs and his subsequent production of the above documents, M&T

11

steadfastly disputed that discovery into Plaintiff's coworkers would lead to the discovery of potentially relevant information.

34. In other words, **but for Mr. Downs' apparent failure to do as instructed by M&T**, Plaintiff may have never discovered that half of her entire department had apparently breached the same Information Security Policy (at least according to the interpretation M&T has applied in this lawsuit), pursuant to which Plaintiff's benefits were terminated and upon which M&T bases its own counterclaim against her.

35. Incredibly, Ms. Frank's email indicates that M&T had been aware of this alleged "data breach" by Plaintiff's coworkers for some time ("We have previously reviewed and confirmed that we are not intending to impact severance benefits"), but only once M&T was in the midst of a federal lawsuit with plaintiff did it decide to request and/or instruct the other former employees to destroy files. **In fact, the Frank email explicitly relates this data destruction plan to the "Saraceni matter,"** as does Mr. O'Neill in his forwarding email to Mr. Salman. There can be no plausible argument that this was not a knowing effort to destroy or conceal potentially relevant evidence.

36. It should go without saying that intentional destruction of evidence—including evidence in the hands of third parties—is prohibited by federal and state law as well as the rules of professional conduct. *See, e.g.*, 18

U.S.C. § 1512(b)(2)(B), New York Penal Law § 215.40; New York Rules of Professional Conduct Rule 3.4; Fed. R. Civ. P. 37.

37. While Plaintiff will be seeking further discovery (and potentially further relief) regarding M&T's efforts to destroy or conceal documents during this lawsuit, in light of the foregoing, Plaintiff respectfully requests an Order of this Court prohibiting Defendant M&T Bank Corporation, its employees and agents, from engaging in any further destruction of documents, electronic files, or other evidence which may be potentially relevant to this lawsuit and from counseling, requesting or instructing any potential witness to destroy or alter potentially relevant evidence, as well as any other relief as this Court deems appropriate.

38. We do not make this motion lightly. To my memory, this is the first time in my 40 plus years of practice as an attorney that I can recall a party—in a civil case in which I was involved—instructing or encouraging witnesses to destroy documents during the course of a lawsuit.

39. I declare under the penalty of perjury, that the foregoing is true and correct.

DATED: January 13, 2021
Buffalo, NY

*s/ Michael A. Brady*
**MICHAEL A. BRADY**