UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTINE SARACENI,

        Plaintiff,

v.

M&T BANK CORPORATION,

        Defendant.

**DECLARATION OF DANIEL J. BRADY, ESQ. IN FURTHER SUPPORT OF MOTION TO QUASH**

Case No.: 19-CV-1152

**DANIEL J. BRADY, ESQ.**, under penalty of perjury, pursuant to 28 U.S.C. § 1746, states as follows:

1. I am an attorney admitted to practice law in New York State and before this Court. I am a member of the law firm Hagerty & Brady, attorneys for Plaintiff Christine Saraceni in this action.

2. I file this Declaration in further support of Plaintiff's motion to quash the subpoena duces tecum served by Defendant M&T Bank Corporation ("M&T") upon witness Richard Downs ("the Downs Subpoena") and in reply to M&T's opposition.

## **M&T's Violation of Fed. R. Civ. P. 45(a)(4)**

3.  In M&T's opposition, M&T makes the claim that Plaintiff should have attempted to work her objections out in good faith with M&T prior to filing this motion.

4.  First, as set forth in my moving Declaration (Dkt. #132-1, at ¶¶ 7-9), M&T requested the very documents sought in the Downs Subpoena four months ago in its Second Request for Production. Plaintiff timely objected to that request on attorney work product grounds and pointed M&T to the caselaw relied on by Plaintiff on this motion.

5.  Prior to serving the Downs Subpoena on February 8, 2021, M&T did not once attempt to work out in good faith Plaintiff's express objection on work product grounds. Instead, as explained below, it violated the Federal Rules of Civil Procedure in an attempt to make an end run around Plaintiff and her counsel.

6.  The facts regarding M&T's service of the Downs Subpoena and its failure to follow the Federal Rules of Civil Procedure are as follows.

7.  On February 8, 2021, at 5:11 pm, I received an email from M&T's counsel, Pauline Muto, attaching a copy of the Downs Subpoena, and stating "We plan to ask Mr. Drexler to accept service of the subpoena." I attach a true

and accurate copy of this email as **Exhibit A**. This email unmistakably suggests that Mr. Drexler would be provided the subpoena at some future date and time.

8. At approximately 6:00 pm that evening, I spoke by phone to Bill Drexler, who informed me that **he already had a copy of the Downs subpoena**.

9. In fact, I have confirmed through subsequent conversation with Mr. Drexler that, although Ms. Muto had written to me at 5:11 pm that they "plan to ask Mr. Drexler to accept service of the subpoena," by that time, **M&T's counsel had already provided the subpoena to Mr. Drexler**. In other words, Mr. Drexler was provided the Downs Subpoena before M&T provided Plaintiff's counsel with a copy of it, in violation of Fed. R. Civ. P. 45(a)(4).

10. Thus, although M&T claims to this Court that it complied with the mandatory prior notice requirement of Fed. R. Civ. P. 45(a)(4), it plainly did not.

11. Moreover, if I had not been able to reach Mr. Drexler on his cell phone that evening, we would have been under the clear impression that M&T had not yet provided a copy of the subpoena to him, given their obligations under the federal rules and the unmistakable statement of future intent in Ms. Muto's email.

12. Because M&T's counsel violated Fed. R. Civ. P. 45(a)(4) and failed to give Plaintiff advance notice of the subpoena (and then affirmatively

misled me in their email of February 8, 2021), there was no opportunity to work this dispute out in good faith. We were faced with the urgent circumstances that Mr. Drexler already had a copy of the Downs Subpoena, and production in response to it could have occurred at any moment.

13. M&T's argument that Plaintiff somehow acted in bad faith is frivolous and duplicitous. It created the emergency condition making the motion necessary, including violating Rule 45(a)(4) and then misleading Plaintiff's counsel about that violation.

## Mr. Downs' Common Interest with Plaintiff and M&T's Severance Pay Calculation Error

14. On July 25, 2019, and again on July 26, 2019, Meghan Frank emailed Plaintiff and informed her that, based on her 11 years of service to M&T, Plaintiff would be receiving severance pay in the biweekly amount of $2,199.08 for 17 weeks, making for a grand total of $18,692.18. A copy of that email is attached as **Exhibit B**.

15. After this lawsuit was commenced, Plaintiff requested copies of the Severance Plan and M&T's Flexible Benefits Plan SPD. Those were provided to Plaintiff's counsel on December 31, 2019.

16. In the spring of 2020, after a review of M&T's plan documents, Plaintiff noticed what appeared to be a calculation error made in Meghan Frank's email attached as Exhibit B.

17. Plaintiff requested copies of her paystubs, which were provided through counsel on June 2, 2020.

18. A review of those paystubs confirmed that indeed the original calculation had been made erroneously, and that the correct calculation of Plaintiff's severance benefits was $28,176.39. Excerpts of M&T's Responses and Supplemental Responses to Plaintiff's Request for Admissions, dated October 13, 2020 and November 18, 2020, admitting this error, are attached as **Exhibit C**.

19. In June 2020, I communicated to counsel for M&T the specific error that had been made in the calculation of Plaintiff's severance benefits.

20. In my subsequent email of July 20, 2020 to witness Richard Downs, I said in part "although you are not required to speak with us at this time, for reasons that we can explain to you and/or your attorney, we believe it may be in your personal interest to do so." Ex. 3 to the Galvin Decl.

21. This severance pay error is what I was referring to.

22. In fact, discovery has revealed that M&T did indeed make this same error with other former members of the Reverse Mortgage Department.

23. Not only that, but following the explanation of the error that we provided to M&T's counsel in June 2020 (and following M&T's receipt of my July 20, 2020 email to Mr. Downs on July 22, 2020 (Ex. 4 to Galvin Decl.)), M&T issued a number of corrective severance payments to former employees whom it had cheated of their full severance benefits.

24. As one example, Jane Harrington, Plaintiff's former supervisor at M&T, received a substantial severance pay adjustment on August 4, 2020. A copy of the letter enclosing that corrective payment is attached as **Exhibit D**.

25. As participants in the Severance Plan, all former members of the Reverse Mortgage Department (including Ms. Harrington), are plainly in common interest with Plaintiff since (1) they are, first and foremost, all participants in the Severance Plan and (2) M&T made an error in administrating the Plan potentially affecting all of them (and for certain at least five of them).

26. Richard Downs and Plaintiff were coworkers for 11 years. They were friends. M&T produced emails in this lawsuit showing that in the days before the Reverse Mortgage Department closed, Mr. Downs and Plaintiff, longtime colleagues about to be laid off, were, unsurprisingly, kibbitzing and complaining to each other. I attach as **Exhibit E** a copy of this email exchange, bearing the bates numbers MT0000398-399.

27. Mr. Downs and Plaintiff cannot, by any reasonable interpretation, be understood to be tantamount to adversarial parties thus waiving the attorney work product protection.

### M&T's Contacts with Richard Downs During this Lawsuit

28. As explained in more detail in Plaintiff's recent motion to prohibit the further destruction of documents by M&T, at the exact same time M&T was marshalling a vigorous defense and its own counterclaims in this lawsuit, it contacted five former employee nonparty witnesses, including Mr. Downs, and instructed them to destroy documents that they had emailed themselves. Dkt. 112-1, at ¶¶ 28-32.

29. Moreover, as revealed by the documents produced by Mr. Downs in response to Plaintiff's subpoena duces tecum served in November 2020, a few weeks after instructing Mr. Downs to destroy documents, on November 1, 2019, Ms. Frank emailed Mr. Downs again, this time using the subject line **"M&T Severance"** and overtly threatened his severance pay. I attach a copy of this email produced by Mr. Downs as **Exhibit F**.

### M&T's Multiplication of this Litigation and Discovery

30. With regard to M&T's repeated claims that Plaintiff is driving up legal fees associated with this matter, we note the following.

31. Plaintiff's affirmative claims in bringing this lawsuit centered on a fairly discrete issue: that M&T arbitrarily and capriciously terminated her ERISA benefits based on the erroneous conclusion that she had sent herself and her husband a "client list."

32. In addition to answering the Plaintiff's Amended Complaint, M&T asserted three counterclaims, including its lone remaining counterclaim, for Plaintiff's alleged breach of the duty of loyalty. That counterclaim involves factual allegations far beyond the single factual issue raised in Plaintiff's claims—that the "client list" was actually a list of Plaintiff's own family and friends.

33. On December 29, 2020, M&T served supplemental initial disclosures in which it revealed that the "monetary damages" it alleges it incurred in its counterclaim against Plaintiff for breach of duty of loyalty amount to $318.11. A copy of M&T's supplemental initial disclosures are attached as **Exhibit G**.

34. M&T's three-hundred-dollar breach of the duty of loyalty counterclaim against Plaintiff has greatly expanded the scope of this litigation and of discovery. As just one example, M&T recently deposed Plaintiff's husband for four hours. M&T would obviously not be entitled to take Mr.

Saraceni's deposition on Plaintiff's affirmative claims, which sound in improper denial of benefits under ERISA § 502(a)(1)(B).

35. The idea that Plaintiff has needlessly increased the costs of this litigation has no basis in reality.

36. As more fully explained in the accompanying Reply Memorandum of Law, the Downs Subpoena is a naked attempt at gathering protected attorney work product. As such the subpoena should be quashed and M&T should be sanctioned for its abuse of the subpoena power.

37. I declare under the penalty of perjury, that the foregoing is true and correct.

DATED: March 3, 2021
Buffalo, New York

                                        s/ Daniel J. Brady
                                        **DANIEL J. BRADY**