UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTINE SARACENI,

        Plaintiff,

    v.

M&T BANK CORPORATION,

        Defendant.

19-CV-1152-LJV
DECISION & ORDER

---

## INTRODUCTION

On August 27, 2019, the plaintiff, Christine Saraceni, commenced this action

under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et

seq.* Docket Item 1.  On January 28, 2020, this Court referred the case to United States

Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. §§

636(b)(1)(A) and (B).  Docket Item 71.

On February 9, 2021, Saraceni moved to quash a subpoena issued by the

defendant, M&T Bank Corporation ("M&T"), to Saraceni's former co-worker, Richard

Downs (the "Downs Subpoena").[1]  Docket Item 132.  Among other things, the Downs

Subpoena requested "[a]ll communications between [Downs] and the attorneys and

staff of [the law firm representing Saraceni,] Hagerty & Brady, including . . . any draft

affidavits, declarations, or sworn statements prepared by Hagerty & Brady . . . delivered

---

[1] Saraceni also moved for sanctions.  Docket Item 132.

to [Downs] or [Downs's attorney, William Drexler]."  Docket Item 132-2 at 4.

On February 24, 2021, M&T responded and cross-moved for sanctions, Docket Item

139, and on March 3, 2021, Saraceni replied, Docket Item 143.

On March 8, 2021, Judge McCarthy issued a Decision and Order ("D&O")

denying the motion to quash because "the work product privilege ha[d] been waived by

disclosure of the information in question to [Downs]."[2]  Docket Item 150 at 2.  On March

15, 2021, Saraceni objected to the D&O, Docket Item 154; on March 22, 2021, M&T

responded, Docket Item 161; and on March 25, 2021, Saraceni replied, Docket Item

165.

This Court has carefully and thoroughly reviewed the record in this case; the

D&O; the objection, response, and reply; and the materials submitted to Judge

McCarthy.  Based on that review, the Court respectfully vacates the D&O and remands

the matter to Judge McCarthy for further proceedings consistent with this decision.

## LEGAL PRINCIPLES

### I.    STANDARD OF REVIEW

Under Rule 72(a) of the Federal Rules of Civil Procedure, when a party timely

objects to a magistrate judge's decision on a non-dispositive matter, "the district judge in

the case must . . . modify or set aside any part of the order that is clearly erroneous or is

contrary to law."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A).  "Matters concerning discovery

generally are considered 'non[-]dispositive' of the litigation."  *Arista Records, LLC v. Doe*

---

[2] Judge McCarthy denied both sanction requests, and neither party objected to
that decision.  *See* Docket Item 150 at 3.

Case 1:19-cv-01152-LJV-JJM   Document 186   Filed 05/04/21   Page 3 of 8

*3*, 604 F.3d 110, 116 (2d Cir. 2010) (quoting *Thomas E. Hoar, Inc. v. Sara Lee Corp.*,

900 F.2d 522, 525 (2d Cir. 1990)).

"[A] finding is 'clearly erroneous' when although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that

a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)

(quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  This standard

"does not entitle a reviewing court to reverse . . . simply because it is convinced that it

would have decided the case differently." *Id.*  An order is contrary to law "when it fails to

apply or misapplies relevant statutes, case law[,] or rules of procedure." *Catskill Dev.,*

*L.L.C. v. Park Place Entrn't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

## II.    WAIVER OF WORK-PRODUCT PRIVILEGE

The Second Circuit has not defined the requirements for waiver of the work-

product privilege by disclosure to a third-party, but courts in this circuit "generally find a

waiver of the work[-]product privilege only if the disclosure 'substantially increases the

opportunity for potential adversaries to obtain the information.'" *See Merrill Lynch &*

*Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004).  "Implicit in

this analysis is the question of whether the third party itself can or should be considered

an adversary." *Id.* at 446.

Accordingly, courts generally have "held that where the disclosing party and the

third party share a common interest, there is no waiver of the work product

privilege." *Id.*  A disclosing party and third party share a "common interest" when they

have a common interest in litigation or legal strategy. *See S.E.C. v. Gupta*, 281 F.R.D.

3

169, 171 (S.D.N.Y. 2012) (noting that the Second Circuit "cite[d] with approval *In re Sealed Case*, an opinion of the D.C. Circuit, which held that a party waives its work[-]product protection in civil litigation if it discloses the privileged material to anyone without common interests in developing legal theories and analyses of documents" (internal marks omitted)); *Schanfield v. Sojitz Corp. of America*, 258 F.R.D. 211, 215 (S.D.N.Y. 2009) ("[T]he common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating:  (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course of formulating a common legal strategy.").

The lack of a shared interest in legal strategy does not foreclose a court's finding common interest, however.  *See Merrill Lynch*, 229 F.R.D. at 447.  Courts have extended the definition of common interest to include shared business interests or even the absence of an adversarial relationship.  *See id.* ("Courts . . . have ruled that it [is] not necessary that the party to whom disclosure [was] made share a 'litigation' interest with the party that asserts the privilege.") (citing *Cellco P'ship d/b/a Verizon Wireless v. Nextel Comm., Inc.*, 2004 WL 1542259, at *1 (S.D.N.Y. July 9, 2004) (deciding that the defendant and its advertising agency shared a common business interest and that disclosure of an e-mail with legal advice therefore did not waive work-product privilege); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001) (finding that there was no waiver of the work-product protection over documents shared among a business, the business's attorneys, and a third-party public relations firm because the business and the public relations firm, which specialized in "litigation-related crisis

management," shared a common interest)).  Under this approach, the question is

"whether [the third party to whom information was disclosed] should be conceived of as

an adversary or a conduit to a potential adversary."  *Id.*  Without a "tangible adversarial

relationship," disclosure to a third-party witness does not waive work-product privilege.

*Id.* at 447-48.

The party asserting the work-product privilege bears the burden of

demonstrating "both that the privilege exists and that is has not been waived."

*Resolution Trust Corp. v. Massachusetts Mutual Life Ins. Co.*, 200 F.R.D. 183, 188

(W.D.N.Y. 2001).  And the risk of disclosure "must be evaluated from the viewpoint of

the party seeking to take advantage of the [work-product] doctrine."  *United States v.*

*Ghavami*, 882 F. Supp. 2d 532, 541 (S.D.N.Y. 2012).

## **DISCUSSION**

On October 16, 2020, Judge McCarthy held a sealed teleconference ▮▮▮▮▮▮



██████████████████████████████████████████████, Brady "proceeded at his own risk in disclosing additional information" to Drexler or Downs.  Docket Item 150 at 3.  Judge McCarthy accordingly concluded that emails between Brady and Drexler and between Brady and Downs, as well as a draft affidavit prepared by Brady for Downs, were discoverable.  *Id.*

This Court respectfully disagrees with Judge McCarthy's conclusion, at least based on the current record.  The facts are not adequately developed in the record to determine whether Drexler's statements to Brady put Brady on notice that disclosure to Downs or Drexler "substantially increase[d] the opportunity for [M&T] to obtain the information."  *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445 (S.D.N.Y. 2004).  As it stands, there is some uncertainty about exactly what Drexler said to Brady; when he said it; and just how strongly Drexler communicated Downs's support of M&T.  For example, Brady contests that Drexler's sentiment was unequivocal throughout their conversations and argues that "nothing in Mr. Drexler's statements regarding conversations with [Saraceni's] counsel remotely suggested that he or Mr. Downs were planning to or might share [Saraceni's] work product with [M&T]."  Docket Item 154 at 20.  And Brady has not had an opportunity to cross examine Drexler or to offer his own version of what was said and when.

Indeed, Brady contends that Drexler's comments "[a]t most" communicated nothing more than Downs's "reluctance to get involved" in the dispute between Saraceni and M&T, *id.*, and a witness's mere hesitance or reluctance to get involved in litigation does not transform that witness into an adversary or potential adversary*, see United States v. Deloitte LLP*, 610 F. 3d 129, 140 (D.C. Cir. 2010) ("[T]he possibility of a future

dispute between Deloitte and Dow does not render Deloitte a potential adversary for the

present purpose.  If it did, any voluntary disclosure would constitute waiver."); *see also*

*Gerber v. Down East Community Hosp.*, 266 F.R.D. 29, 33 (D. Maine 2010) ("Of course

. . . there is the extra hazard that the witness might also share counsel's side of the

email correspondence with the other side . . . . In any event, it does not mean that this

Court should compel production of attorney work product during the discovery

process.").  On the other hand, ████████████████████████████████

██████████████████████████, then Saraceni, through her attorney, very well may

have proceeded at her own risk in sharing protected information with him.  The Court

simply does not have sufficient information before it to resolve that question.

## CONCLUSION

For those reasons, this Court vacates the D&O and remands this matter to Judge

McCarthy for an evidentiary hearing to determine what Drexler and Downs

communicated to Saraceni and Brady and when; to decide whether those

communications made it likely, from Saraceni's and Brady's perspective, that Drexler or

Downs would share any disclosure with M&T; and for a decision on the developed

record.

SO ORDERED.

Dated:   May 3, 2021

        Buffalo, New York


                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE